UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

**FRANKIE M. PHILLIPS,**  Case No.: _:__-cv-____

**Plaintiff,**

v.

**HARBOR VENICE MANAGEMENT, LLC**

**a Florida Corporation,**

**Defendant.**

_____/

## PLAINTIFF FRANKIE M. PHILLIPS' COMPLAINT

Plaintiff, Frankie M. Phillips, by and through her undersigned counsel, files this, her complaint against Defendant, Harbor Venice Management, LLC, a Florida corporation (hereinafter, "Defendant"), an employer as defined in the state of Florida, and states as follows in support thereof:

## NATURE OF THE ACTION

1. This is a proceeding for damages and injunctive relief to redress the deprivation of rights secured to Plaintiff by the Civil Rights Act of 1964 42 U.S.C. 2000e et seq. with regard to her gender and the ADA Amendments Act of 2008 42 U.S.C. ch. 126 § 12101 et seq.

## PARTIES

2. Frankie M. Phillips is an individual currently residing in, Sarasota, County, Florida. She is a citizen of the United States and a resident of the state of Florida.

1

Plaintiff is a person entitled to protection pursuant to the provisions of the the ADA Amendments Act of 2008 42 U.S.C. ch. 126 § 12101 et seq. and the Civil Rights Act of 1964 42 U.S.C. 2000e et seq.

3. During all relevant times, Plaintiff was an employee of Defendant.

4. Defendant is a business with an assisted living and skilled nursing facility located in Sarasota County, Florida.

5. At all times relevant to the allegations in this Complaint, Defendant operated from that facility in Sarasota, Florida.

6. The facility is named HarborChase of Venice.

7. At all relevant times, Defendant employed more than 15 people. Defendant was the employer of Plaintiff at all times relevant to this action.

## JURISDICTION

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this matter involves a federal question based upon the 29 U.S.C. §§ 621 et seq. This Honorable Court has jurisdiction over this matter as this case arises under the equal protection clause of the Fourteenth Amendment to the United States Constitution and poses a question of federal law.

9. The Tampa District Court is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(l) and (b)(2) because this is the District and Division in which a substantial part of the events or omissions giving rise to the claims occurred.

## VENUE

10. The unlawful employment practices alleged below were within the state of Florida, in Sarasota. Accordingly, venue lies in the United States District Court for the Middle District of Florida, Tampa Division under 29 U.S.C. § 1391(b) and 28 U.S.C. § 1391(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff timely filed this action, as was her right, after receiving a written notice of right to sue from the U.S. Equal Employment Opportunity Commission, Tampa office.  A copy of said decision is attached hereto and marked Exhibit "A." Said Exhibit "A" is incorporated herein as though set forth in full. Plaintiff regrets said EEOC has failed to effect voluntary compliance with the requirements of the ADA Amendments Act of 2008 42 U.S.C. ch. 126 § 12101 et seq. and The Civil Rights Act of 1964, as amended, 42 U.S.C. § 20003 et seq. on the part of said Defendant.

## STATEMENT OF FACTS

12. Plaintiff Frankie M. Phillips, age 62, worked at Defendant's HarborChase of Venice facility.

13. She worked there for over thirteen years, as director of resident care.

14. Her manager, Wally Dandy, former executive director of HarborChase of Venice discriminated against her.

15. Her manager created a hostile work environment.

16. He discriminated against Plaintiff based on her disability (cancer) and gender.

17. Two other former employees who had/have cancer who were under Mr. Dandy's supervision have filed complaints against HaborChase of Venice. They were similarly situated and similarly discriminated against.

18. Plaintiff was retaliated against when she tried to take time off due to her disability.

19. As a result, Plaintiff was constructively terminated on or about October 30, 2018.

20. Plaintiff did not receive help or any reasonable accommodation when requested.

21. Plaintiff wrote her employer saying she sought help.

22. Plaintiff complained in writing to her employer about a hostile work environment.

23. One former employee, provided a signed statement to Ms. Phillips stating:

> I want to let you know the conversation I had with Theresa McCarthy, HR for Harbor Chase of Venice on August 16, 2018. At the end of the meeting I stated "have a nice day". Theresa McCarthy stated, "it wouldn't be a nice day because she had to start papering someone out the door." I asked Theresa McCarthy who she was talking about and Theresa McCarthy stated "Frankie Phillips." I asked

> Theresa McCarthy why Frankie Phillips? Theresa McCarthy stated "Frankie Phillips is hardly here due to her Cancer." I… was an employee at Harbor Chase of Venice from … and was also terminated when Theresa McCarthy and Wally Dandy learned of my pre-cancer diagnoses.

24. Upon information and belief, Mr. Dandy's employment with Defendant has recently been terminated.

25. Ms. Phillips is a breast cancer survivor. After coming back from her surgery Mr. Dandy would ask Ms. Phillips very personal questions about details of her breast surgery. Did you have a lump removed? Did you have a radical mastectomy – double? What treatment will you be getting? Chemo? Radiation? Did they put a port in? Where?

26. This behavior was invasive and made her very unformattable. While receiving chemotherapy treatments, she would take off days of the treatments and work four 10-hour days to not miss hours. She scheduled radiation after her workday. She was made to feel by Mr. Dandy that she should miss as little work as possible.

27. Nurse Alicia, another breast cancer diagnosee, did not go into rooms with known infections, wore a mask for reverse isolation and other nurses took her patients with infections. This was known and allowed. No provisions were made for Ms. Philips. Ms. Phillips was an administrative nurse that only should have very seldom gone into patients' room. She was not supposed to go into the patients' building while in this condition. Alicia was allowed to take off four days after her chemotherapy treatments with no questions or intimidating comments.

28. Ms. Phillips had a bi-lateral mastectomy in July 2017. She underwent another part of her reconstruction surgery on Monday August 6, 2018 and she was required to bathe with bactro-shield CHG 4% 2 days before surgery and the morning of the surgery.

29. On Saturday August 4, 2018 and Mr. Dandy wanted Ms. Phillips to work the 3-11 p.m. shift as a floor nurse. She told Mr. Dandy she could not work because she could not leave home after she bathed with the bactro-shield. Mr. Dandy became very upset and stated that he wanted a doctor's note stating this.

30. Ms. Phillips' surgery date then changed. Her doctor's office called and asked If they could change the surgery from Tuesday August 7, 2018 to Monday August 6, 2018. She agreed to that date. She tried to tell Mr. Dandy. She did let human resources know the surgery date and got FMLA paperwork for her doctor to fill out.

31. Mr. Dandy also wanted Ms. Phillips to provide in writing exactly when the doctor's office called her to change the date. He stated that his wife and sons have had many surgeries and was never told that they could not come out. She asked Mr. Dandy if they had cancer or a compromised immune system where they would have to go into an environment with patients with known MRSA and other contagious infections prior to their surgery.

32. Ms. Phillips was upset Mr. Dandy apparently had discussed her health information with his wife.

6

33.     Mr. Dandy sent Ms. Phillips angry text messages.  The human resource director also stated that she had surgery and never heard of the anti-bacterial wash.

34.     They retaliated against Ms. Phillips when she returned to work.

35.     Ms. Phillips was subjected to this treatment and resulting stress prior to surgery and the fear of the unknown after she returned to work.

36.     She was set up for failure.

37.     She returned to work from being out for surgery on August 13, 2018 with a letter that stated may not lift anything over 5 pounds or do any heavy pushing or pulling.  She also was not to be in close proximity of anyone who may be carrying an active infection until re-evaluated on August 20, 2018.  She still had incisions from surgery that were not healed.  She worked all day on August 6, 2018 and was called by Human Resources while driving home that afternoon around 5:00 p.m. that she could not return to work.  H.r. stated that if Ms. Phillips had to do a "flatline" code on a dying patient, she would not be able to perform my duty.  She never did such a code in the 13 years of service at HarborChase.

39.     The nurse assigned to the ill patient does a code with the assistance of the other floor nurse or ADON.  The most Ms. Phillips had done is call EMTs, doctors, family members and fill out paperwork.  She was not asked this information by the human resource director on the policy for LTC codes.

40.     She was not given the opportunity to work from home as other managers including the human resource manager worked from home and were paid.

7

41. She had exhausted her sick time and nearly all her vacation time. The social service director was out having hip surgery and could work from home to supplement her income.

42. Meanwhile, Ms. Phillips was told that she could not use the days she worked as a c.n.a or nurse on the weekends as comp days.

43. When she had her double mastectomy, she asked the human resource manager if she was able to work around Ms. Phillips' limitations and why was this time different? She responded that she was not here then, but now we are going to do things this way.

44. On August 20, 2018 after her follow-up visit with her physician, Ms. Phillips returned to work with a note from her doctor stating restrictions of pulling, pushing or lifting over 10 pounds until re-evaluated in 6 weeks. She worked the entire day and the next day after a morning director meeting the human resources director came to her office and told her that she would not be allowed to work due to her restriction of 10 pounds. She provided Ms. Phillips with a copy of her signed job description. She stated to be able to perform her duties she needed to be able to lift over 10 pounds. She said to Ms. Phillips she needed to leave and let her know when she was leaving the building. She went back to the human resource director and told her she was leaving.

45. Ms. Phillips said, "it sucks having Cancer." She replied it's not about the Cancer with no empathy or compassion.

46. Because of Ms. Phillips' financial situation she felt she had no alternative but to go back to the doctor's office and get a release with no restrictions so she could continue to work and keep her needed insurance for post cancer treatments, hoping that nothing happens to her in the process. Her job did not include lifting anything.

47. The climate was very cold when she returned to work.

48. Ms. Phillips' stamina was still not back to normal since chemotherapy and radiation. After working 13 days straight, she texted Mr. Dandy she was not coming in and that she was exhausted. Mr. Dandy told her that was not approved.

49. That same day, Linda Dennis, social service director texted in to say she was not coming in and was allowed to do so.

50. Through her discussion with Mr. Dandy, she told Mr. Dandy her blood pressure was extremely high. Mr. Dandy made Ms. Phillips feel like she was using this as an excuse. When she arrived at work she was called into a meeting with human resources and told if her blood pressure was going to be an issue, she would need a note stating what her restrictions were from the doctor. She told them she only mentioned it because she wanted him to know why she was feeling poorly. She told them she would never mention her blood pressure to them again for them to use it against her.

51. This was a very intimidating meeting with both human resources and Mr. Dandy. The Human Resources Director was constantly stating she has a master's in employment law and that's why the company hired her.

52. Ms. Phillips' annual evaluation was due since May 2018. She asked Mr. Dandy each payday after her service date. He would just smirk and ignore her.

53. Ms. Phillips filed her charge of discrimination prior to her constructive termination.

54. She suffered adverse employment action.

55. She had no write ups until Mr. Dandy began working there and supervising Ms. Phillips. Criticism and pressure regarding compliance started after Ms. Phillips became ill.

56. Alleged infractions on the part of Ms. Phillips have since been concocted by Defendant as a pretext for her constructive termination.

57. Upon information and belief both the former h.r. director and Mr. Dandy have now been separated from employment from Defendant.

**STATEMENT OF CLAIMS COUNT I: RETALIATION**

58. Plaintiff realleges and incorporates in this Count I Paragraphs 12 through 57.

59. This is a cause of action for retaliation under the Civil Rights Act of 1964 42 U.S.C. 2000e et seq.

60. Plaintiff engaged in statutorily protected activities of requesting reasonable accommodations for her breast cancer.

61. She suffered adverse employment actions.

62. The causal link between these events is demonstrated, at least in part, by the close proximity in time between events.

63. But-for the discrimination and retaliation by the Defendant's agents toward Plaintiff, she would be employed by Defendant.

64. Defendant's refusal to accommodate Plaintiff to her proper position was in retaliation against Plaintiff.

## STATEMENT OF CLAIMS COUNT II: RETALIATION

65. Plaintiff realleges and incorporates in this Count I Paragraphs 12 through 57.

66. This is a cause of action for retaliation under the ADA Amendments Act of 2008 42 U.S.C. ch. 126 § 12101 et seq.

67. Plaintiff engaged in statutorily protected activities of requesting reasonable accommodations for her breast cancer.

68. She suffered adverse employment actions.

69. The causal link between these events is demonstrated, at least in part, by the close proximity in time between events.

70. But-for the discrimination and retaliation by the Defendant's agents toward Plaintiff, she would be employed by Defendant.

71. Defendant's refusal to accommodate Plaintiff to her proper position was in retaliation against Plaintiff.

## STATEMENT OF CLAIMS COUNT III: RETALIATION

72. Plaintiff realleges and incorporates in this Count I Paragraphs 12 through 57.

73. This is a cause of action for retaliation in violation of the laws of the state of Florida, Florida Civil Rights Act, Florida Statutes § 760 et seq., justifying an award, inter alia, of back pay, front pay, interest benefits, special damages, compensatory and punitive damages against said Defendant.

74. Plaintiff engaged in statutorily protected activities of requesting reasonable accommodations for her breast cancer.

75. She suffered adverse employment actions.

76. The causal link between these events is demonstrated, at least in part, by the close proximity in time between events.

77. But-for the discrimination and retaliation by the Defendant's agents toward Plaintiff, she would be employed by Defendant.

78. Defendant's refusal to accommodate Plaintiff to her proper position was in retaliation against Plaintiff.

## COUNT IV: DISABILITY DISCRIMINATION

79. Plaintiff restates, realleges, revers and hereby incorporates by reference any and all allegations of paragraphs 12 through 57.

80. Plaintiff suffers from one or more physical impairment(s) that substantially limits one or more major life activities. She both has a record of such impairment and, upon information and belief, was regarded by her employer as being so impaired.

81. Plaintiff alleges that Defendant unlawfully and discriminatorily constructively terminated Plaintiff's employment on account of her disability in violation of the laws of the state of Florida, Florida Civil Rights Act, Florida Statutes § 760 et seq., justifying an award, inter alia, of back pay, front pay, interest benefits, special damages, compensatory and punitive damages against said Defendant.

## COUNT V: DISABILITY DISCRIMINATION

82. Plaintiff reavers and incorporates by reference all of the allegations set forth in paragraphs 12 through 57.

83. Plaintiff suffers from a physical impairment(s) that substantially limits one or more major life activities. She both has a record of such impairment and, upon information and belief, was regarded by his employer as being so impaired.

84. Plaintiff's disability(ies) were a determining factor in Defendant's decision to constructively terminate her.

85. Defendant knowingly and willfully discriminated against Plaintiff on the basis of her disabilities in violation of the ADAAA.  In addition, she avers that Defendant's unlawful and discriminatory termination of her employment on account of her diability violates the provisions of the ADA Amendments Act of 2008, as amended, 42 U.S.C. § 12101 et seq., justifying an award, inter alia, of backpay, front pay, benefits and compensatory and liquidated damages against Defendant.

## COUNT VI: SEX DISCRIMINATION

86. Plaintiff restates, realleges, revers and hereby incorporates by reference any and all allegations of paragraphs 12 through 57, inclusive, herein.

87. Plaintiff alleges that Defendant unlawfully and discriminatorily constructively terminated Plaintiff's employment on account of her sex, female, in violation of the laws of the state of Florida, Florida Civil Rights Act, Florida Statutes § 760 et seq., justifying an award, inter alia, of back pay, front pay, interest benefits, special damages, compensatory and punitive damages against said Defendant.

## COUNT VII: SEX DISCRIMINATION

88. Plaintiff reavers and incorporates by reference all of the allegations set forth in paragraphs 12 through 57 herein.

89. Plaintiff's sex (female) was a determining factor in Defendant's decision to constructively terminate her.

90. Defendant knowingly and willfully discriminated against Plaintiff on the basis of her sex (female) in violation of the Civil Rights Act of 1964. In addition, she avers that Defendant's unlawful and discriminatory constructive termination of her employment on account of her gender violates the provisions of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 20003 et seq., justifying an award, inter alia, of backpay, front pay, benefits and compensatory and liquidated damages against Defendant.

## DAMAGES

91. As a direct and proximate consequence of Defendant's unlawful and discriminatory employment policies and practices, Plaintiff has suffered a loss of income, including, but not limited to, past and future wages, benefits, expenses, payment for insurance and various other expenses, pain and suffering, compensatory damages and punitive damages, all to be specified at trial.

## INJUNCTIVE RELIEF

92. Plaintiff restates, realleges, reavers and hereby incorporates by reference any and all allegations of paragraphs 12 through 22, inclusive, herein. In addition, Plaintiff alleges that Defendant's discriminatory actions herein must be enjoined by this Court in order to force Defendant to comply with law. It is suggested that the injunction be specific in enjoining Defendant and its employees, agents and representatives.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully prays for judgment against Defendant as follows:

For a money judgment representing compensatory damages, including, lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

For a money judgment representing punitive damages for Defendant's willful violations of law; liquidated (compensatory) damages pursuant to 29 U.S.C. §626(b);

For a money judgment representing prejudgment interest, if applicable;

Reinstatement and restoration of benefits upon conditions that Plaintiff and supervisors be enjoined to comply with the law.

That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable provisions;

For lost monies and damages pertaining to out-of-pocket expenses, especially related to, but not limited to, medical expenses, and loss of retirement benefits;

For suit costs, including an award for reasonable attorney's fees, expert fees; and for such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this Action pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated this 25th day of September, 2019.

*Kevin F. Sanderson*

_____

Kevin F. Sanderson, Esq.
Florida Bar No. 0598488
Kevin F. Sanderson, Chartered
7717 Holiday Drive
Sarasota, Florida 34321
Tel: (941) 444-1548
Fax: (941) 924-0086
kevin@srqattorney.com
Trial Attorney for Plaintiff