UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANKIE M. PHILLIPS,

    Plaintiff,

v.

    CASE NO.: 8:19-cv-2379 VMC-TGW

HARBOR VENICE MANAGEMENT,
LLC, a Florida Corporation,

    Defendant.

_____

**DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT,
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, HARBOR VENICE MANAGEMENT, LLC, through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), files this Motion to Dismiss Counts I-VII for failure to state a cause of action upon which relief may be granted, or in the alternative, files this Motion for a More Definite Statement, and states:

1. Plaintiff, Frankie M. Phillips, filed this case against Defendant on September 25, 2019.

2. Plaintiff asserts seven (7) counts in her Complaint, including: 1) Retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"); 2) Retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12202 et seq., ("ADA") ; 3)  Retaliation under the

1

        Florida Civil Rights Act, Ch. 760, Fla. Stat. ("FCRA"); 4) Disability Discrimination under FCRA; and 5) Disability Discrimination under the ADA; 6) Sex Discrimination under FCRA; and 7) Sex Discrimination under Title VII.

3.     As further set forth below, Counts I-VII should be dismissed in whole or in part for failure to state a cause of action upon which relief may be granted.

4.     Alternatively, to the extent any Counts are not dismissed in whole due to failure to state a claim, Defendant requests a more definite statement regarding the specific factual basis for each of those claims, to enable Defendant to appropriately and intelligently frame its responsive pleading.

## **MEMORANDUM OF LAW**

### A. **Legal Standards**

#### a. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff is still obligated to provide the grounds for her entitlement to relief. *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 550 U.S. at 555). In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts generally are limited to the four corners of the complaint and must assume all well-pleaded factual allegations to be true, although they need not accept legal conclusions or naked assertions. *Id.*

### b. Motion for More Definite Statement

A Motion for a More Definite Statement may be filed when "a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). The Federal Rules of Civil Procedure require a short and plain statement of each claim "…that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (citations omitted). The plaintiff must provide enough detail in the complaint "…respecting all the material elements to sustain a recovery." *Scheid v. Fanny Farmer Candy Shops Inc.*, 859 F.2d 434, 436 (6th Cir. 1998).

## B. <u>Analysis and Argument</u>

### a. Plaintiff's General Factual Allegations Incorporated into All Counts

Plaintiff alleges she was employed as a Director of Resident Care for over thirteen years at Defendant's Venice, Florida facility. Dkt. 1 at ¶¶ 12-14. Plaintiff was diagnosed with breast cancer and underwent a bi-lateral mastectomy in July of

2017. *Id.* at ¶¶ 25, 28. After returning to work from this surgery, Plaintiff alleges the Executive Director of the facility (and her manager), Wally Dandy, asked her questions regarding the details of her surgery and continuing treatment. *Id.* at ¶ 25. Plaintiff asserts she felt the questions were invasive. *Id.* at ¶ 26. Thereafter, Plaintiff coordinated her schedule around her chemotherapy treatments so she could still work full-time. *Id.* She alleges she was made to feel that she should miss the least amount of work possible by Mr. Dandy. *Id.*

Plaintiff underwent reconstruction surgery on August 6, 2018. *Id.* at ¶ 28. She alleges she was required to bathe with a bactro-shield two days prior to her surgery and the morning of the surgery. *Id.* She alleges Mr. Dandy wanted her to work on August 4, 2018 but she told him she could not leave her home after bathing with the bactro-shield. *Id.* at ¶ 29. She alleges Mr. Dandy was upset and asked for a doctor's note regarding stating the same. *Id.* At some point thereafter, Plaintiff's doctor's office called her to change her surgery date. *Id.* at ¶ 30. She alleges she attempted to tell Mr. Dandy and he requested a note detailing when she was notified of the change in the surgery date. *Id.* She then alleges he stated his wife and sons have had many surgeries and they were never prohibited from coming out prior to surgery. *Id.* at ¶ 31. Plaintiff alleges that she was upset by this comment because she assumed Mr. Dandy discussed Plaintiff's health information with his wife. *Id.* at ¶ 32. Plaintiff alleges Mr. Dandy sent her "angry" text messages. *Id.* at ¶ 33. "This treatment" allegedly occurred prior to her surgery. *Id.* at ¶ 35.

Plaintiff returned to work on August 13, 2018 with a letter stating she could not lift more than five pounds, she should not do heaving lifting or pushing, and that she should not be in close proximity of those carrying infectious diseases until re-evaluated on August 20, 2018. *Id.* at ¶ 37. That evening she was called by the Human Resources director and told she could not work due to her restrictions. *Id.*

Plaintiff alleges another nurse with breast cancer could work on the floor with a mask and have other nurses cover patients with infections. *Id.* at ¶ 27. Plaintiff asserts no similar accommodation was made for her but does not allege she ever requested such an accommodation. *Id.* Plaintiff also asserts she was denied the ability to work from home, unlike other managers, and denied the use of comp time, during this time period. *Id.* at ¶¶ 40-41.

Plaintiff returned to work on August 20, 2018 with new restrictions from her doctor which included that she could not lift more than ten pounds until reevaluated in six weeks. *Id.* at ¶ 43. The next morning, the HR director gave her a copy of her job description and stated she could not work her position with the restriction. *Id.*

Plaintiff alleges she went back to her doctor's office and requested a release with no restrictions. *Id.* Plaintiff alleges her job did not include lifting anything. *Id.* at ¶ 46. When she returned to work, she alleges the "climate was very cold." *Id.* at ¶ 47. She alleges she called in sick to work one morning, but Mr. Dandy told her it was not approved. *Id.* at ¶ 48. On this date, she mentioned to Mr. Dandy her blood pressure was extremely high. *Id.* at ¶ 50. She alleges Mr. Dandy made her feel as

if she was using her blood pressure as an excuse. *Id.* Thereafter, she had a meeting with Mr. Dandy and the HR Director wherein she was told that if her high blood pressure was going to present an issue, she would need a doctor's note setting forth any restrictions. *Id.* Plaintiff asserts she mentioned her high blood pressure to explain why she was feeling poorly (and presumably did not want to come into work that day) and that she would never mention it again so it could not be "use[d] against her." *Id.* She alleges the meeting was "very intimidating." *Id.* at ¶ 51.

Plaintiffs alleges although her annual evaluation was due since May 2018, it was not completed. *Id.* at ¶ 52. When she asked Mr. Dandy about it each payday he would "smirk and ignore her." *Id.* at ¶ 52. Plaintiff alleges she was never written up prior to Mr. Dandy's tenure and that "criticism and pressure regarding compliance" started after Plaintiff became ill. *Id.* at ¶ 55. She also alleges that Defendant has concocted alleged infractions as a pretext for her constructive termination. *Id.* at ¶ 56. Plaintiff alleges she was constructively terminated October 30, 2018. *Id.* at ¶ 19.

Plaintiff generally alleges that her manager, Mr. Dandy, "created a hostile work environment," and discriminated against Plaintiff based on her disability and her gender. *Id.* at ¶¶ 15-16. She also generally alleges she was retaliated against when she tried to take time off time due to her disability and that she received no help or reasonable accommodation when requested. *Id.* at ¶¶ 18, 20.

### b. Retaliation under Title VII (Count I)

Plaintiff alleges this Count is a retaliation claim under Title VII. The retaliation provision of Title VII makes it unlawful for any employer to discriminate against an employee because the employee engaged in certain "protected activity," including "oppos[ing] any practiced made unlawful by [Title VII], or … ma[king] a charge, testify[ng], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 41 U.S.C. § 2000e-3. Title VII prohibits status-based employment discrimination based on "race, color, religion, sex, or national origin." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e-2(a)).

Count I alleges: "Plaintiff engaged in statutorily protected activities of requesting reasonable accommodations for her breast cancer" and "Defendant's refusal to accommodate Plaintiff to her proper position was in retaliation against Plaintiff." Dkt. 1 at ¶¶ 60, 64. According to the plain language of the statute, requesting a reasonable accommodation due to a disability is not a "protected activity" falling within the scope of Title VII's anti-retaliation provision. Accordingly, Count I fails as a matter of law and is due to be dismissed.

### c. Sex-Based Discrimination under FCRA and Title VII (Counts VI & VII)

Counts VI & VII are sex-based discrimination claims asserted under FCRA and Title VII, respectively. Under Title VII of the Civil Rights Act, it is unlawful for an employer "to discriminate against any individual with respect to his compensation,

7

terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). FCRA discrimination claims are construed by courts according to applicable Title VII case law. *See Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 n.3 (Fla. 1st DCA 2002).

Both Counts allege, in a conclusory manner, that Plaintiff was constructively discharged based on her sex (female). Dkt. 1 at ¶¶ 87, 89-90. Plaintiff also alleges (in a similar, wholly conclusory manner) that Mr. Dandy discriminated against Plaintiff "based on her…gender" in the generalized fact section of her Complaint. *Id.* at ¶ 16.

"[C]omplaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011). Thus, Plaintiff's Complaint must contain "sufficient factual matter" to support a reasonable inference that HarborChase engaged in intentional sex-based discrimination against her. *Henderson*, 436 F. App'x at 937. There are any number of ways Plaintiff can do this, including "alleging facts showing that similarly-situated [male employees] were offered more favorable [employment] terms," *id.*, or direct evidence of [intentional] discrimination, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

Plaintiff's Complaint contains nothing more than vague, conclusory allegations that she was discriminated against because of her sex. The Complaint contains no underlying allegations suggesting she was discriminated against based

8

on her sex, such as direct evidence relating to her status as a woman or that male employees were treated differently or more favorably than her. Rather, the underlying factual allegations all relate to her breast cancer[1] diagnosis and treatments, *i.e.*, her disability. Plaintiff's burden to sufficiently and plausibly plead her claims is not met by mere legal conclusions and formulaic recitations of the elements of a Title VII or FCRA discrimination claim.

These Counts are also subject to dismissal because the allegations contained in the Complaint do not rise to the high level required to state a claim for constructive discharge, as discussed *infra*.

Accordingly, Counts VI & VII are subject to dismissal for failure to state a claim upon which relief may be granted.

### d. Disability Retaliation under ADA and FCRA (Counts II & III)

Counts II & III are disability retaliation claims under the ADA and FCRA. Retaliation claims under both the ADA and FCRA follow the analysis under Title VII, and thus these claims may be analyzed together. *Russell v. City of Tampa*, 737 F. App'x 922, 923-24 (11th Cir. 2018).

A *prima facie* case of retaliation requires the plaintiff to show (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal relation between the two events. *Thomas v. Cooper*

---

[1] One can only imagine that opposing counsel has pled this claim on the basis that breast cancer is more common in women than men. However, undersigned counsel has failed to locate any authority suggesting that alleged disparate treatment based on a breast cancer diagnosis can form the basis of a sex-based discrimination claim.

*Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

Both Counts allege that Plaintiff engaged in protected activity by requesting a reasonable accommodation. Dkt. 1 at ¶¶ 67, 74. Requesting a reasonable accommodation may be protected activity. *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998). It is unclear, however, based on the vague allegations of the Complaint, what specific reasonable accommodation(s) were requested and when. This information is particularly important to allow Defendant to analyze and respond to this claim because a retaliatory act is necessarily one which takes place *after* protected activity.

Plaintiff alleges in the generalized fact section that she was "retaliated against when she tried to take time off due to her disability," and that she was retaliated against when she returned to work after her reconstruction surgery. Dkt. 1 at ¶¶ 19, 34. Therefore, it appears at a minimum she may be alleging her request for a reasonable accommodation was her statement to Mr. Dandy that she could not work on August 4, 2018 prior to her surgery.

Plaintiff alleges under both Counts, in a conclusory manner, that she suffered adverse employment actions. Dkt. 1 at ¶¶ 68, 75. It is again unclear what specifically is being claimed as retaliatory "adverse employment actions," as both Counts merely incorporate by reference the entire broad range of generalized factual allegations set forth at the beginning of the Complaint. Based on Plaintiff's broad range of vague allegations, she could be attempting to assert that the

10

retaliatory adverse actions are: a retaliatory hostile work environment, a retaliatory constructive discharge, or any other broad range of alleged actions of Defendant.

Plaintiff alleges in the general facts section that Mr. Dandy created a hostile work environment. The Eleventh Circuit has not held in a published opinion that a hostile work environment cause of action (retaliatory or otherwise) exists under the ADA. *See Menzie v. Ann Taylor Retail, Inc.*, 549 F. App'x 891, 896 n.9 (11th Cir. 2013) (*per curiam*) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA. We do not decide that issue today because [Plaintiff] never asserted such a claim."); *Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x. 860, 868 (11th Cir. 2012) (*per curiam*) ("We have not addressed the availability of a claim for a hostile work environment under either the ADA or the Rehab Act."). To the extent such a claim exists and is governed by Title VII standards and authority, Plaintiff must establish: (1) Plaintiff engaged in protected activity, (2) after doing so, Plaintiff was subjected to unwelcome harassment, (3) Plaintiff's protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment. *Baroudi v. Sec'y, Dep't of Veterans Affairs*, 616 F. App'x 899, 904 (11th Cir. 2015) (*per curiam*) (citing *Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012)).

Once again, Plaintiff's failure to specify what reasonable accommodation(s) she requested and when makes it difficult to analyze this claim because the alleged

retaliatory harassment would have to occur *after* the protected activity. To the extent the alleged protected activity was the refusal to work prior to her surgery, the allegations relating to the activity that followed is insufficient to rise to the high level required to establish the severe and pervasive element of the hostile work environment claim. As noted by the Eleventh Circuit, this element "tests the mettle of most [hostile environment] harassment claims." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 5883 (11th Cir. 2000). It has both an objective and subjective component. *Gowski*, 682 F.3d at 1311-12. This means that the plaintiff must "subjectively perceive" the harassment as severe enough to change the terms of his employment, and the harassment must result in an environment that a reasonable, objective person would find hostile or abusive. *Id.* In evaluating the objective component, courts should consider all the circumstances surrounding the retaliatory conduct, to include its frequency and severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's job performance. *Id.*

Throughout this inquiry, courts must remain mindful that the "standards for judging hostility are sufficiently demanding to ensure that [a proscription against hostile work environments] does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations omitted). To that end, "conduct must be extreme to amount to a change in the terms and conditions of employment." The workplace must be "permeated with discriminatory intimidation,

ridicule, and insult." *Harris Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted).

Offhand comments and isolated incidents do not suffice. *Id; see e.g., Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254-56 (11th Cir. 2014). Neither do a supervisor's critique of an employee's job performance. *See McCoy v. Macon Water Authority*, 966 F.Supp. 1209, 1221 (M.D. Ga. 1997); *accord Rattigan v. Holder*, 604 F.Supp.2d 33, 49 (D.D.C. 2009). As the Eleventh Circuit has stated about hostile work environment claims, "Title VII prohibits discrimination; it is not a shield against harsh treatment at the workplace." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (internal quotations omitted).

As to conduct occurring after her statement that she could not work on August 4, 2018, immediately prior to her reconstruction surgery, Plaintiff alleges that:

- Mr. Dandy questioned her need to stay home due to the bacto-shield and requested a doctor's note regarding the same. Dkt. 1 at ¶¶ 29, 31.

- Mr. Dandy requested written documentation surrounding the change in scheduled date of her surgery. *Id.* at ¶ 31.

- Mr. Dandy sent "angry" text messages to her. *Id.* at ¶ 33.

- The HR director sent her home due to her medical restrictions on two occasions. *Id.* at ¶¶ 37, 44.

- She was not allowed to work from home. *Id.* at ¶ 40.

- She was not permitted to use comp time gained while working on the weekends. *Id.* at ¶ 42.

- The climate was "cold" when she returned from surgery. *Id.* at ¶ 47.

- Mr. Dandy told her a last-minute day-off request was not approved. *Id.* at ¶ 48.

- She was informed a doctor's note with restrictions would be needed if her high blood pressure was going to affect her ability to work (immediately after she seemingly called in sick due to high blood pressure). *Id.* at ¶ 50.

- She received unspecified write-up's, criticisms of her work and pressure to comply at some unspecified time after she became ill. *Id.* at ¶ 55.

- Mr. Dandy would ignore and smirk at her when she asked about her annual evaluation. *Id.* at ¶ 52.

Defendant submits that this alleged treatment is not sufficiently severe or pervasive, from an objective standpoint, to amount to a hostile work environment. According to the allegations of the Complaint, Plaintiff may have faced questioning, skepticism[2] and even personal animosity at work just prior to her reconstruction surgery and after returning to work, but such falls more into the category of the "ordinary tribulations" of the workplace rather than a workplace "permeated with discriminatory intimidation, ridicule, and insult."

Where Plaintiff's underlying factual allegations do not plausibly allege severe and pervasive harassment, dismissal is appropriate. *See Spivey v. Enter. City Bd. of Educ.*, No. 1:18-cv-427-SRW, 2019 U.S. Dist. LEXIS 13580, at *15-16 (M.D. Ala. Jan. 29, 2019).

---

2 *Woodruff v. Sch. Bd. of Seminole Cty.*, 304 F. App'x 795, 799 (11th Cir. 2008) (false accusations of inappropriate conduct, uncooperative co-workers and skepticism regarding plaintiff's disability did not amount to hostile work environment).

Plaintiff also generally alleges that the retaliation she experienced resulted in her constructive discharge. Dkt. 1 at ¶¶ 18-19. A "[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (citations omitted). Whether an employee's working conditions were so intolerable is an objective question. *See Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1363 (11th Cir. 1994) ("A claim for constructive discharge requires the employee to demonstrate that the work environment and conditions were so unbearable that a reasonable person in that person's position would be compelled to resign.").

"The threshold for establishing constructive discharge . . . is quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). The standard is higher than proving a hostile work environment existed. *See id.* Where a plaintiff has failed to establish a hostile work environment, a claim of constructive discharge must also fail. *See, e.g.*, *Rodriguez v. HSBC Bank USA, N.A.*, No. 8:14-cv-945-T-30TGW, 2015 U.S. Dist. LEXIS 157883, at *28-29 (M.D. Fla. Nov. 23, 2015). Additionally, even though Plaintiff included allegations suggesting she may have been informed that Defendant was contemplating terminating her, Dkt. 1 at ¶ 23,[3] this fact is also insufficient to support a constructive discharge. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 806 (11th Cir. 2005) ("[T]he possibility that a plaintiff

---

3 The Complaint does not allege *when* Plaintiff was informed of this statement, prior to

15

may not remain employed is not by itself enough to place a reasonable person in the position of 'quit or be fired.'").

Plaintiff's factual allegations fall far short of circumstances in which the Eleventh Circuit has found a constructive discharge might be established. *cf. Poole v. Country Club*, 129 F.3d 551, 552 (11th Cir. 1997) (holding that constructive discharge claim survived summary judgment where the plaintiff was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers").

As to any other discrete "adverse actions," anti-retaliation provisions "protect[] an individual not from all retaliation but from retaliation that *produces an injury or harm.*" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Id.* at 68. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Burlington*, 548 U.S. at 68). "Petty and trivial" actions by the defendant are not sufficiently adverse. *Id.* at 974 fn. 13; *see also Burlington*, 548 U.S. at 68 ("[N]ormally petty slights, minor annoyances, and simple lack of good manners would not dissuade a reasonable employee from making or supporting a charge of discrimination."). Defendant asserts the balance of any potential, discrete "adverse

---

her resignation or after the fact.

actions" asserted in Plaintiff's Complaint are merely trivial slights and the claims are therefore due to be dismissed for failure to state a claim.

Plaintiff also alleges in these Counts: "Defendant's refusal to accommodate Plaintiff to her proper position was in retaliation against Plaintiff." Dkt. 1 at ¶¶ 71, 78. In the Eleventh Circuit, basing an ADA retaliation claim on a refusal to accommodate the plaintiff is not proper. *See Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1288 (11th Cir. 1997). Therefore, the retaliation claims are due to be dismissed to the extent they are predicated on an alleged failure to provide reasonable accommodations.

In sum, Defendant asserts Plaintiff's disability retaliation claims under the ADA and FCRA are due to be dismissed because: 1) Plaintiff has failed to plausibly allege a retaliatory hostile work environment; 2) Plaintiff has failed to plausibly allege a constructive discharge; 3) Plaintiff has failed to allege any other discrete, "adverse actions" that are objectively and materially adverse as opposed to mere trivial slights; and 4) a failure to accommodate is not a valid basis for a retaliation claim.

However, to the extent any portion of Plaintiff's disability retaliation claims remain or can proceed, Defendant moves for a more definite statement so that Defendant may intelligently and appropriately analyze such claims and respond. Defendant requests a more definite statement regarding: 1) the reasonable accommodations requested and when such requests occurred; and 2) the specific adverse actions alleged to have been taken in retaliation of each reasonable

accommodation request.

### e. Disability Discrimination under FCRA (Count IV)

Plaintiff alleges under this Count that "Defendant unlawfully and discriminatorily constructively terminated Plaintiff's employment on account of her disability." Dkt. 1 at ¶ 81. For the reasons discussed above, Plaintiff's Complaint fails to plausibly allege a constructive discharge claim. Therefore, this claim is subject to dismissal for failure to state a claim upon which relief may be granted.

### f. Disability Discrimination under ADA (Count VII)

Plaintiff alleges under this Count: "Defendant knowingly and willfully discriminated against Plaintiff on the basis of her disabilities," and Defendant unlawfully and discriminatorily terminated her on the basis of her disability." Dkt. 1 at ¶ 85. To the extent this claim is based on constructive discharge, it should be dismissed because the Complaint fails to plausibly allege a constructive discharge. It is unclear what, if any, other discriminatory acts upon which this claim is based. If this claim is attempting to assert a claim for failure to provide reasonable accommodations, the Complaint fails to plausibly allege the same because it is unclear what, if any, reasonable accommodations were requested by Plaintiff and when. Therefore, this claim is either due to be dismissed for failure to state a claim, or the Court should order Plaintiff to provide a more definite statement of the factual basis for this claim.

### C. Conclusion

For the reasons set forth above, Defendant Harbor Venice Management, LLC respectfully requests that this Court enter an Order dismissing Counts I-VII of Plaintiff's Complaint for failure to state a claim upon which relief may be granted; or alternatively, to the extent any Counts are not dismissed in whole for failure to state a claim, directing Plaintiff to provide a more definite statement of the facts supporting each individual Count; and for any other relief the Court deems just and proper.

**CARR ALLISON**

/s/ P. David Brannon
P. David Brannon ◆ FBN 820636
Email: dbrannon@carrallison.com
Kayla Scarpone ◆ FBN 0113606
Email: kscarpone@carrallison.com
305 S. Gadsden Street
Tallahassee, FL  32301
(850) 222-2107; (850) 222-8475 Facsimile

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 25, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a

Notice of Electronic Filing to the following: **Kevin F. Sanderson, Esquire** (kevin@srqattorney.com), Attorneys for Plaintiff.

**CARR ALLISON**

/s/ P. David Brannon
P. David Brannon ⬥ FBN 820636
Email: dbrannon@carrallison.com
Kayla Scarpone ⬥ FBN 0113606
Email: kscarpone@carrallison.com
305 S. Gadsden Street
Tallahassee, FL  32301
(850) 222-2107; (850) 222-8475 Facsimile

Attorneys for Defendant