UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANKIE M. PHILLIPS,

    Plaintiff,

v.                       Case No. 8:19-cv-2379-T-33TGW

HARBOR VENICE MANAGEMENT, LLC,

    Defendant.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant Harbor Venice Management, LLC's Motion to Dismiss or, in the Alternative Motion for More Definite Statement (Doc. # 9), filed on November 25, 2019. Plaintiff Frankie M. Phillips filed a response in opposition on December 30, 2019. (Doc. # 18). For the reasons explained below, the Motion is granted as set forth herein.

**I.   Background**

On September 25, 2019, Phillips initiated this employment discrimination lawsuit against her former employer, Harbor Venice Management. (Doc. # 1). According to Phillips, Harbor Venice is a "business with an assisted living and skilled nursing facility" named HarborChase of Venice (Id. at 2). Phillips worked for more than thirteen years as

the director of resident care at HarborChase. (Id. at 3). She alleges that her manager, Wally Dandy, the former executive director of HarborChase, discriminated against her on the basis of her gender and her disability (breast cancer) and created a hostile work environment. (Id. at 3-4). In addition, Phillips alleges that she was retaliated against when she attempted to take time off due to her disability. (Id. at 4). Phillips writes that, "[a]s a result, [she] was constructively terminated on or about October 30, 2018." (Id.).

According to the complaint, Phillips had a bi-lateral mastectomy in July 2017. (Id. at 6). After returning to work, Dandy asked Phillips questions she found to be personal and invasive, such as whether she had a lump removed, whether she had a double mastectomy, and the details of her cancer treatments. (Id. at 5). Phillips alleges that, while receiving chemotherapy treatments, she continued to work 40-hour weeks and was made to feel by Dandy "that she should miss as little work as possible." (Id.). By contrast, Phillips alleges that another nurse with breast cancer was allowed certain accommodations, including avoiding "rooms with known infections," wearing a mask, having other nurses care for her

patients with infections, and being allowed time off after her chemotherapy treatments. (Id.).

Phillips underwent reconstructive surgery on August 6, 2018. (Id. at 6). According to Phillips, she was required to bathe with "bactro-shield CHG 4%" on the two days prior to and the morning of her reconstructive surgery. (Id.). On August 4, 2018, Dandy asked Phillips to work a shift as a floor nurse, but Phillips refused because she could not leave her home after she bathed with the bactro-shield. (Id.). According to the allegations, this refusal made Dandy "very upset and . . . he wanted a doctor's note" confirming this. (Id.). Dandy also wanted Phillips to provide in writing "exactly when the doctor's office called her" to change the date of her surgery from August 7 to August 6. (Id.). Dandy stated that "his wife and sons have had many surgeries and [they were] never told that they could not come out." (Id.). Phillips further alleges that Dandy sent her "angry text messages" and that the human resources director stated that she had never heard of the anti-bacterial wash. (Id. at 7).

When Phillips returned to work on August 13, 2018, following her reconstructive surgery, she had the following restrictions: she could not lift anything heavier than five pounds, could not do any heavy pushing or pulling, and had to

avoid being in close proximity to anyone carrying an active infection. (Id.). When driving home from work that night,[1] Phillips claims that human resources called her and said she could not return to work because her restrictions would render her unable to "do a 'flatline' code on a dying patient." (Id.). Phillips states that she never performed such an activity in her 13 years of employment at HarborChase. (Id.). Phillips claims that, unlike what it offered to others, Harbor Venice never offered her the ability to work from home and, instead, required her to exhaust her sick and vacation time. (Id. at 7-8).

On August 20, 2018, after a follow-up visit with her doctor, Phillips had the following updated work restrictions: she could not pull, push, or lift weights greater than 10 pounds for the next six weeks. (Id. at 8). Shortly thereafter, however, a human resources employee provided Phillips with a copy of her written job description, told Phillips that she would not be allowed to continue work due to her work restrictions, and asked Phillips to leave. (Id.).

---

[1] The complaint alleges that this phone call took place on August 6, 2018, but the Court takes Phillips to mean that the phone call occurred on August 13, her first day back at work following the reconstructive surgery.

4

Phillips alleges that she felt she had "no alternative but to go back to the doctor's office and get a release with no restrictions so she could continue to work and keep her needed insurance." (Id. at 9). Subsequently, after working for thirteen straight days, Phillips texted Dandy that she would not come into work due to exhaustion. (Id.). Dandy responded that this was not approved. (Id.). According to Phillips, on that very same day, another employee texted in to say she was not coming in and was allowed to do so. (Id.).

After mentioning her high blood pressure to Dandy, Phillips alleges she was called into a "very intimidating" meeting with human resources and Dandy, where Phillips was told that she needed a note from her doctor about her high blood pressure. (Id. at 9-10). According to Phillips, "[s]he had no write-ups until Mr. Dandy began working [at HarborChase]" and that any alleged infractions on her part are entirely pretextual. (Id. at 10).

Based on these allegations, Phillips brings seven causes of action: (1) retaliation in violation of Title VII (Count 1); (2) retaliation under the Americans with Disabilities Act, as amended (ADA) (Count 2); (3) retaliation under the Florida Civil Rights Act (FCRA) (Count 3); (4) disability discrimination under the FCRA (Count 4); (5) disability

discrimination under the ADA (Count 5); (6) sex discrimination under the FCRA (Count 6); and (7) sex discrimination under Title VII (Count 7). (Id. at 10-15).

Harbor Venice moves to dismiss the complaint for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, moves for a more definite statement under Rule 12(e). (Doc. # 9). Phillips has responded, and the Motion is now ripe for review.

## II. Legal Standard

When considering a motion to dismiss brought under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

In addition, Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement when a pleading is so "vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

## III. Discussion

In its Motion, Harbor Venice seeks dismissal of every count in the complaint for failure to state a cause of action upon which relief may be granted.

### A. Retaliation Claims

Phillips brings claims for retaliation under Title VII, the ADA, and the FCRA (Counts 1 through 3). (Doc. # 1 at 10-

12). As to all of these claims, she alleges that she engaged in statutorily protected activity by requesting reasonable accommodations for her breast cancer, she suffered an adverse employment action, and there is a causal link between these events. (Id.). She also alleges that her former employer's "refusal to accommodate [Phillips] to her proper position was in retaliation against [her]." (Id.).

### 1. Retaliation under Title VII

Harbor Venice argues that under the plain language of Title VII, requesting a reasonable accommodation for a disability, as Phillips claims here, is not a "protected activity" within Title VII's anti-retaliation provision. (Doc. # 9 at 7). According to Harbor Venice, Count 1 must therefore be dismissed as a matter of law. (Id.).

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Further, Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice [under Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Id. § 2000e-3(a).

A plaintiff asserting a retaliation claim under Title VII must show that: (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal connection between the protected activity and the materially adverse action. Howard v. Walgreen Co._, 605 F.3d 1239, 1244 (11th Cir. 2010).

Regarding the first element, a plaintiff engages in statutorily protected activity only by opposing an unfair employment practice that is at least facially actionable under Title VII. Coutu v. Martin Cty. Bd. of Cty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995). In this respect, a plaintiff must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. Howard_, 605 F.3d at 1244. The plaintiff need not prove that the conduct she opposed was actually unlawful, but the court must measure the reasonableness of plaintiff's belief that her employer engaged in an unlawful employment practice against existing substantive law. Id.

Here, as to Count 1, Phillips alleges employment discrimination under Title VII based only on her purported disability, which is not a characteristic enumerated in Title VII. See Coutu, 47 F.3d at 1074 (explaining that, absent discrimination based on one of the enumerated characteristics

listed in the statute, unfair treatment is not an unlawful employment practice under Title VII); see also 42 U.S.C. § 2000e-16(a) (listing the protected characteristics of "race, color, religion, sex, or national origin"). Based on the substantive law, Phillips could not have reasonably believed that Harbor Venice engaged in any employment practice made unlawful by Title VII, and, accordingly, she did not engage in statutorily protected activity by requesting a reasonable accommodation for her disability. See <u>Branscomb v. Sec'y of Navy</u>, 461 F. App'x 901, 906 (11th Cir. 2012) (upholding dismissal of plaintiff's Title VII claim based only on his purported disability); see also <u>Collins v. Dep't of Children & Families</u>, No. 19-cv-21236-Gayles, 2019 WL 5784679, at *1 (S.D. Fla. Nov. 5, 2019) ("Title VII extends only to discrimination and retaliation claims 'based on that individual's race, color, religion, sex, or national origin.' Although other federal statutes may protect employees with medical conditions or disabilities, Title VII does not." (internal citation omitted)). Accordingly, the Motion is granted with respect to Count 1.

**2. Retaliation under the ADA and FCRA**

Retaliation claims under the ADA and the FCRA follow the Title VII analysis, and so the Court will analyze these claims

together. Russell v. City of Tampa, 737 F. App'x 922, 923 (11th Cir. 2018).

In Counts 2 and 3, Phillips alleges that she engaged in protected activity by requesting reasonable accommodations for her breast cancer (Doc. # 1 at 11-12), and Harbor Venice concedes that requesting a reasonable accommodation may be protected activity under the ADA. (Doc. # 9 at 10); see also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998) (explaining that a request for reasonable accommodation under the ADA may constitute statutorily protected activity if the plaintiff can show that she had a good faith, objectively reasonable belief that she was entitled to such accommodations under the ADA).

Instead, Harbor Venice argues that it is unclear from the vague allegations in the complaint what specific reasonable accommodations Phillips requested and when. (Doc. # 9 at 10). Moreover, it argues that Phillips has failed to adequately allege an adverse employment action. According to Harbor Venice, "[b]ased on Plaintiff's broad range of vague allegations, she could be attempting to assert that the retaliatory adverse actions are: a retaliatory hostile work environment, a retaliatory constructive discharge, or any

other broad range of alleged actions of Defendant." (Doc. # 9 at 10-11).

Harbor Venice's argument is well taken. In her complaint's general factual allegations, Phillips alleged that Dandy "created a hostile work environment" and that she was constructively terminated in October 2018. (Doc. # 1 at 3, 4). She also alleges that she was denied certain accommodations and leave afforded to other employees. (Id. at 5, 7, 9). In the allegations in support of her ADA and FCRA retaliation claims, Phillips alleges in conclusory fashion that she "suffered adverse employment actions." (Id. at 11, 12). Yet, beyond the date of her constructive termination, it is not clear what specific accommodations Phillips requested, when she requested them, or when certain adverse employment actions were taken against her, which would help to show that such actions were taken in retaliation against her.

As currently pled, the Court can only guess at what theory or theories Phillips is proceeding under, or what facts specifically support those theories. For the sake of clarity, the Court advises Phillips that, in her amended complaint, she should articulate what reasonable accommodations she requested and when, what adverse employment action or actions were taken against her and when, and separately identify her

various theories of recovery. See Mora-Gillespie v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., No. 5:99-cv-93-OC-10C, 2000 WL 33323082, at *3 (M.D. Fla. Feb. 3, 2000) (granting motion for more definite statement where plaintiff had commingled Title VII claims for disparate treatment, hostile work environment, and constructive discharge in a single count, and explaining that defendants "cannot be expected to frame a proper response to these allegations until they are made aware of the precise claims asserted by the [p]laintiff"). Counts 2 and 3 are dismissed with leave to amend.

### B. Disability Discrimination

Counts 4 and 5 allege disability discrimination under the FCRA and the ADA. Phillips alleges that she is disabled because she "suffers from one or more physical impairment(s) that substantially limits one or more major life activities." (Doc. # 1 at 13). Further, she alleges that Harbor Venice violated the FCRA by its unlawful constructive termination of her employment. (Id.). In her ADA discrimination claim, Phillips alleges that Harbor Venice "knowingly and willfully discriminated against [her] on the basis of her disabilities" and "[i]n addition . . . [Harbor Venice's] unlawful and

discriminatory termination of her employment" violates the ADA. (Id. at 14).

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate that (1) she has a disability, (2) she is a qualified individual, which is to say, able to perform the essential functions of the job she holds with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against her because of her disability. Cooper v. Community Haven for Adults & Children with Disabilities, No. 8:12-cv-1041-T-33EAJ, 2013 WL 24240, at *6 (M.D. Fla. Jan. 2, 2013) (citing D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1226 (11th Cir. 2005)). Disability discrimination claims under the FCRA are analyzed under the same framework as ADA claims. Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000).

While failure to make reasonable accommodations for an otherwise qualified disabled employee will constitute discrimination under the ADA, the duty to provide such accommodation is only triggered when the employee makes a specific demand for accommodation. Cooper, 2013 WL 24240 at *7 (citing Knowles v. Sheriff, 460 F. App'x 833, 835-36 (11th Cir. 2012)). "Thus, the initial burden of requesting an accommodation is on the employee, and only after the employee

14

has satisfied that burden and the employer failed to provide the accommodation can the employee prevail on a discrimination claim." Id.

Here, Phillips's complaint vaguely alleges that she "did not receive help or any reasonable accommodation when requested" and that Phillips "wrote her employer saying she sought help." (Doc. # 1 at 4). And while Phillips points to other employees who were treated differently from her (e.g., the nurse with breast cancer granted certain allowances, other employees allowed to work from home or allowed to take off work with little advance notice), she does not clearly allege that she ever requested these same accommodations. (Id. at 5, 7, 9). As such, the complaint does not articulate when, where, or to whom Phillips requested reasonable accommodations, what reasonable accommodations she requested, or how many times she requested them. See Cooper, 2013 WL 24240, at *7-8 (granting motion to dismiss ADA claims where plaintiff failed to allege that she asked for and was denied a specific accommodation or failed to allege how her request was linked to her alleged disability and the essential functions of her job).

Additionally, while it appears that Phillips is alleging a constructive discharge under the FCRA, it is unclear whether

her ADA claim is similarly constricted, given Phillips's vague language that Harbor Venice knowingly discriminated against her in violation of the ADA and "[i]n addition," forced a termination of her employment in violation of the ADA. Again, the Court advises Phillips that, when she files her amended complaint, she should include allegations pertaining to the reasonable accommodations she requested, that her requests were denied, and when such requests and denials occurred. She is also advised to clarify what theory or theories undergird her disability discrimination claims.

C. **Gender Discrimination**

Counts 6 and 7 allege gender discrimination under Title VII and the FCRA. Specifically, Phillips alleges that Defendant constructively terminated her employment on the basis of her gender. (Doc. # 1 at 14-15).

Harbor Venice argues that Phillips has offered only vague, conclusory allegations that she was discriminated against on the basis of her sex, which fails to meet the plausibility standard of Twombly. The Court agrees. Phillips's complaint is directed entirely at the alleged discrimination she suffered due to her breast cancer. The complaint fails to state that she was directly discriminated against due to her gender or that Harbor Venice treated

Phillips differently than male nurses. The sole allegation in the complaint about gender is that Dandy "discriminated against [Phillips] based on her disability (cancer) and her gender." (Doc. # 1 at 4). This is insufficient. See Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."); Iqbal, 556 U.S. at 678 (explaining that a complaint is insufficient under Rule 8 if it "tenders naked assertions devoid of further factual enhancement" (internal quotation marks omitted)). Thus, Counts 6 and 7 must be repled.

## IV. Conclusion

For the reasons given above, the complaint fails to meet the requisite pleading standards and fails to give Harbor Venice fair notice of the claims and theories that Phillips lays at its door. However, the Court will give Phillips leave to file an amended complaint because it does not believe at this juncture that such amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that district courts should deny leave to amend when amendment is futile).

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Harbor Venice Management, LLC's Motion to Dismiss or, in the Alternative Motion for More Definite

Statement (Doc. # 9) is **GRANTED**. All counts of the complaint are dismissed with leave to amend.

(2) Plaintiff may file an amended complaint within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of January, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE