UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANKIE M. PHILLIPS,

    Plaintiff,

v.                                    Case No. 8:19-cv-2379-T-33TGW

HARBOR VENICE MANAGEMENT, LLC,

    Defendant.

_____/

### ORDER

    This matter is before the Court on consideration of Defendant Harbor Venice Management, LLC's Motion to Dismiss Amended Complaint (Doc. # 29), filed on March 6, 2020. Plaintiff Frankie M. Phillips filed a response in opposition on March 20, 2020. (Doc. # 30). For the reasons explained below, the Motion is granted in part and denied in part.

### I.   Background

    The pertinent facts underlying Phillips's lawsuit were laid out in this Court's prior Order. (Doc. # 24). There is no need for them to be repeated here. In short, Phillips alleges that her former employer, Harbor Venice, discriminated against her on the basis of her disability (breast cancer) and her gender. In her amended complaint, Phillips brings ten causes of action: (1) retaliation claims

1

under the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA) (Counts I through VI); (2) disability discrimination under the ADA and the FCRA (Counts VII and VIII); and (3) sex discrimination under the FCRA and Title VII of the Civil Rights Act of 1964 (Counts IX and X). See (Doc. # 28).

Harbor Venice moves to dismiss the amended complaint for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6) and Phillips has responded. The Motion is now ripe for review.

## II. Legal Standard

When considering a motion to dismiss brought under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

> recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. **Analysis**

### A.   **Retaliation Claims**

Counts I through VI of the amended complaint are disability retaliation claims under the ADA and FCRA. (Doc. # 28 at 11-22). Phillips brings these claims under theories of disparate treatment, hostile work environment, and constructive discharge. (Id.).

Retaliation claims under both the ADA and FCRA follow the analysis under Title VII, thus, these claims may be

analyzed together. Russell v. City of Tampa, 737 F. App'x 922, 923 (11th Cir. 2018).

It is a violation of the ADA for any person to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

To establish a prima facie case of retaliation,[1] a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). Harbor Venice concedes that requesting a reasonable accommodation may be protected activity under the ADA. (Doc. # 29 at 9); see also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998) (explaining that a request for reasonable accommodation under the ADA may

---

[1] When a plaintiff attempts to prove discrimination using circumstantial evidence, the Court must apply the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Corning v. LodgeNet Interactive Corp., 896 F. Supp. 2d 1138, 1144 (M.D. Fla. 2012).

constitute statutorily protected activity if the plaintiff can show that she had a good faith, objectively reasonable belief that she was entitled to such accommodations under the ADA).

### 1. **Disparate Treatment**

Because Phillips has met the first prong of a prima facie retaliation action, the Court must next look to see whether she has alleged an adverse employment action. In Count I, Phillips alleges five facts: (1) on August 31, 2018, another employee was allowed to work from home while Phillips was not; (2) on September 5, 2018, a different employee took time off work to care for her sick father, while during the same timeframe Phillips was not allowed a day off despite working for 13 days straight; (3) Harbor Venice refused to respect her work restriction that she not lift more than 10 pounds; (4) on September 20, 2018, another employee's "limitations" after she had hip surgery were accommodated; and (5) yet another employee was allowed time off after she had worked two prior Saturdays, while Phillips was not allowed comp days. (Doc. # 28 at ¶¶ 62-66). In short, the adverse employment actions alleged in connection with this count all revolve around Harbor Venice's alleged failure to accommodate Phillips's disability.

Harbor Venice argues that failure to accommodate is not a valid basis for a retaliation claim. (Doc. # 29 at 9-10). It points out that Phillips alleges that "Defendant's refusal to accommodate Plaintiff to her proper position was in retaliation against Plaintiff." (Doc. # 28 at ¶¶ 69, 103). Harbor Venice's point is well taken. The Eleventh Circuit has written that:

> As we observed in <u>Stewart v. Happy Herman's Cheshire Bridge, Inc.</u>, discrimination on the basis of disability is different from retaliation on the basis of opposing unlawful practices or filing a charge against the employer. In <u>Stewart</u>, we refused to address the plaintiff's "retaliation" claims that were based on simple refusals to accommodate her. We stated that "[i]n our view, the acts Stewart describes relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim."

<u>Calvo v. Walgreens Corp.</u>, 340 F. App'x 618, 625–26 (11th Cir. 2009) (citations omitted); <u>see also</u> <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1261 (11th Cir. 2001) (rejecting plaintiff's argument that his employer "took adverse action against him by failing to reasonably accommodate him" because "this contention merely reclothes Lucas' ADA discrimination claim"). Accordingly, Counts I and IV are dismissed.

## 2.   **Hostile Work Environment**

Harbor Venice argues that the Eleventh Circuit has never held in a published opinion that a hostile work environment

claim, retaliatory or otherwise, exists under the ADA. (Doc. # 29 at 11). Furthermore, to the extent such a claim exists, Harbor Venice maintains that Phillips's allegations are insufficient to state a cognizable claim for a hostile work environment. (Id. at 11-12). Specifically, Harbor Venice argues that the allegations "fail to rise to the high level required to establish the severe and pervasive element of the hostile work environment claim." (Id. at 12).

As an initial matter, Harbor Venice is correct that the Eleventh Circuit has never recognized a hostile work environment claim under the ADA. See Menzie v. Ann Taylor Retail, Inc., 549 F. App'x 891, 896 n.9 (11th Cir. 2013) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA. We do not decide that issue today because [plaintiff] never asserted such a claim."); Gilliard v. Ga. Dep't of Corr., 500 F. App'x 860, 868 (11th Cir. 2012) ("We have not addressed the availability of a claim for hostile work environment under either the ADA or the Rehab Act."); see also Stewart v. Jones Util. & Contracting Co., Inc., No. 19-14115, 2020 WL 1313636, at *2, n.2 (11th Cir. Mar. 19, 2020) (assuming for the purposes of that case that an ADA hostile work environment claim exists, but noting that "we need not decide whether that cause of

action does in fact exist"). The Eleventh Circuit has, however, expressly recognized the existence of a retaliatory hostile work environment claim under Title VII. Gowski v. Peake, 682, F.3d 1299, 1311-12 (11th Cir. 2012). But since Gowski was decided, the Eleventh Circuit has declined to answer whether the same rationale regarding Title VII hostile work environment claims would apply to such claims under the ADA. See Menzie, 549 F. App'x at 896 n.9.

"[S]everal other circuits have concluded that the ADA provides a cognizable claim for a disability-based hostile work environment." Cooper v. CLP Corp., 679 F. App'x 851, 853 n.2 (11th Cir. 2017). And several district courts within the circuit have assumed this claim exists. See, e.g., Shaling v. UPS Ground Freight, 202 F. Supp. 3d 1283, 1290-91 (N.D. Ala. 2016) (recognizing an ADA hostile work environment claim and finding that the "language of Title VII and the ADA match closely"); Schwertfager v. City of Boynton Beach, 42 F. Supp. 2d 1347, 1365-67 (S.D. Fla. 1999) ("Following the practice of other district courts, the Southern District of Florida has, likewise, presumed the existence of an ADA hostile environment claim.").

This Court agrees with its sister courts' observation that the Title VII anti-retaliation statute bears many

similarities to the ADA's anti-retaliation provision. See Shaling, 202 F. Supp. 3d at 1290-91 (describing these similarities in detail and denying defendant employer's motion for summary judgment on an ADA-based retaliatory hostile work environment claim). Accordingly, for the purposes of ruling on this Motion, the Court will assume that a disability-based hostile work environment claim is actionable under the ADA. Furthermore, given their similar frameworks, this Court will evaluate Phillips's claim under the jurisprudence of Title VII.

To adequately allege a retaliatory hostile work environment claim, Phillips must allege that: (1) she engaged in protected activity, (2) after doing so, she was subjected to unwelcome harassment, (3) her protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment. Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs, 616 F. App'x 899, 904 (11th Cir. 2015) (citing Gowski, 682 F.3d at 1311-12). Moreover, the fourth prong has both an objective and a subjective component. Id. "That is, the employee must 'subjectively perceive' the harassment as severe or pervasive enough to change the terms of her employment, and the harassment must result in an environment

that a reasonable person would find hostile or abusive. In evaluating the objective component, we consider the frequency and severity of the retaliatory conduct, as well as whether it (1) is physically threatening or humiliating, and (2) unreasonably interferes with the employee's job performance." Id. (citations omitted). The Court must also bear in mind that neither Title VII, nor the ADA, is a "general civility code, and simple teasing[,] offhand comments, and isolated incidents (unless extremely serious) do not  constitute a hostile work environment." Guthrie v. Waffle House, Inc., 460 F. App'x 803, 806 (11th Cir. 2012).

Here, Phillips alleges that her manager, Wally Dandy, and Harbor Venice created a hostile work environment in retaliation for her taking time off, or attempting to take time off, for her breast cancer treatment. (Doc. # 28 at ¶¶ 14-15). She points to Dandy's "invasive" and personal comments and questions made after her first breast surgery, angry text messages that he sent her (that he later asked her to ignore), refusing to accommodate her stated work restrictions, being called into a "very intimidating meeting" with Harbor Venice's human resources director and Dandy, "write ups" by Dandy, an email Dandy wrote to her about "staffing issues" that was actually a pretext for retaliation

against her, and Dandy's failure to allow her to work from home or otherwise accommodate her work limitations, while he allowed such accommodations to other employees. (<u>Id.</u> at ¶¶ 25-26, 29-31, 33, 44, 51, 55, 72-77, 106-11). This conduct took place between Phillips's first surgery, in July 2017, and when she left Harbor Venice on October 30, 2018. <u>See</u> (<u>Id.</u>).

Harbor Venice argues that the conduct alleged by Phillips in this case is not sufficiently "severe or pervasive" to meet the objective threshold for a sustainable claim. (Doc. # 29 at 12-13). However, with one exception, the cases on which Harbor Venice rely were not decided under a motion-to-dismiss standard.[2] The Court finds that whether the treatment Phillips was subjected to was sufficiently severe and pervasive, as necessary for a hostile work environment claim, is an issue better answered at summary judgment.

---

[2] The Court finds the case relied upon by Harbor Venice, <u>Spivey v. Enterprise City Board of Education,</u> to be distinguishable. There, the plaintiff-employee, a special education teacher, alleged that she was first effectively demoted to a paraprofessional role and treated as a teacher's aide and then formally reprimanded and terminated. No. 1:18-CV-427-SRW, 2019 WL 357983, at *2-3 (M.D. Ala. Jan. 29, 2019). The plaintiff in <u>Spivey</u> did not endure multiple angry text messages from her superiors, repeated orders to stay home for what she claims were trumped-up reasons, or a repeated disregard of requests for accommodations to recover from a serious illness, as Phillips alleges occurred here.

For now, viewing Phillips's allegations under the appropriate motion to dismiss standard, Phillips has met her burden.  According to the amended complaint, as part of her reconstructive surgery in August 2018, when Phillips refused to work a shift after having already bathed in the bactro-shield solution, Dandy "became very upset and stated that he wanted a doctor's note stating this," told her "that his wife and sons have had many surgeries and [they were] never told that they could not come out," and sent her approximately 22 "angry text messages" in the days leading up to her reconstructive surgery. (Doc. # 28 at ¶¶ 28-31, 33). In addition, when Phillips returned to work on August 13, 2018, with certain work restrictions, she was given what she considers a pretextual reason as to why she could not return to work. (Id. at ¶¶ 37-38).  When her doctor then changed her work restrictions, the human resources director shortly thereafter provided Phillips a written copy of her job description, explained that the work restrictions were incompatible with her job description, and told her to leave the building. (Id. at ¶ 44). Moreover, Phillips includes allegations that multiple other Harbor Venice employees were allowed certain accommodations that she was not allowed, such as working from home, using comp days, or avoiding certain

duties or patients in order to protect their health. (Id. at
¶¶ 27, 40-42). For example, Phillips alleges that after
working for 13 straight days, she texted Dandy that she could
not come in because she did not feel well. (Id. at ¶ 48).
Harbor Venice, through Dandy, did not approve this request
despite granting other, similar requests. (Id. at ¶¶ 48-49,
62-66). According to Phillips, when she complained about this
difference in treatment, she was simply told "now we are going
to do things this way." (Id. at ¶ 43).

While this conduct was not physically threatening or
humiliating, Phillips has alleged sufficient facts that,
taken as true and granting Phillips all reasonable inferences
in her favor, show that the work environment at Harbor Venice
in that three-month period of August, September, and October
2018 was of a kind that a reasonable person would find hostile
or abusive.[3] Thus, Counts II and V of the amended complaint
remain.

### 3. Constructive Discharge

Harbor Venice argues that Phillips has failed to
demonstrate that she was constructively discharged because

---

[3] Harbor Venice does not argue that Phillips has not
adequately alleged the causation element of a prima facie
case.

her factual allegations "fall far short of circumstances in which the Eleventh Circuit has found a constructive discharge might be established." (Doc. # 29 at 14-15). To prove a constructive discharge under the ADA, "a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" Griffin v. GTE Florida, Inc., 182 F.3d 1279, 1283-84 (11th Cir. 1999). In addition, the plaintiff must show that the employer intentionally rendered the employee's working conditions so intolerable based on a protected status, such as disability, that the employee was compelled to quit involuntarily. Henson v. City of Dundee, 682 F.2d 897, 907 (11th Cir. 1982). Moreover, whether the working conditions were sufficiently intolerable to amount to a constructive discharge is judged by an objective standard, not the employee's subjective feelings. Richio v. Miami-Dade Cty., 163 F. Supp. 2d 1352, 1367 (S.D. Fla. 2001).

The standard for proving constructive discharge is higher than the standard for proving a hostile work environment. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001); see also Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316-18 (11th Cir. 1989) (affirming district court's conclusion that Title VII

14

plaintiffs were subjected to hostile work environment, but were not constructively discharged).

The Court agrees with Harbor Venice that Phillips's allegations fall short of the threshold needed to show that her working conditions were so intolerable that she had no choice but to resign. See Poole v. Country Club, 129 F.3d 551, 552 (11th Cir. 1997) (holding that constructive discharge claim survived summary judgment where the plaintiff was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers"). Accordingly, Counts III and VI are dismissed.

### B.    Disability Discrimination

Counts VII and VIII of Phillips's amended complaint allege disability discrimination under the ADA and the FCRA under theories of disparate treatment, hostile work environment, and constructive discharge. (Doc. # 28 at 22-25).

#### 1.    Disparate Treatment

To establish a prima facie case of disparate treatment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, (1) she had a disability, (2) she was a qualified individual, and (3) she was subjected to unlawful discrimination because of her

15

disability. <u>See</u> <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264, 1268 (11th Cir. 2014).

Harbor Venice does not dispute in its brief that Phillips is disabled and a qualified individual within the meaning of the ADA and, for the purposes of this Motion, the Court will assume she is disabled and is a qualified individual. The crux of the dispute is whether Harbor Venice subjected Phillips to unlawful discrimination on the basis of her disability.

Absent direct evidence of disability discrimination, Phillips must show that Harbor Venice treated her less favorably than similarly situated, non-disabled employees. <u>Wolfe v. Postmaster General</u>, 488 F. App'x 465, 468 (11th Cir. 2012).[4] Phillips alleges that after "working 13 days straight, [Phillips] texted Mr. Dandy she was not coming in and that she was exhausted" due to her chemotherapy and radiation treatments. (Doc. # 28 at ¶ 48). Dandy did not approve this leave even though, on the same day, the social services director "texted in to say she was not coming in and was

---

[4] Although <u>Wolfe</u> involved a disparate treatment claim under the Rehabilitation Act, "[t]he legal standards that apply to determine liability under the Rehabilitation Act are the same as those under the [ADA]" <u>Wolfe</u>, 488 F. App'x at 466.

allowed to do so." (Id. at ¶¶ 48-49). In addition, Phillips alleged specific instances in August and September 2018 where other employees requested and received time off, comp days, or the ability to work from home. (Id. at ¶¶ 62-66, 135). When Phillips asked for similar treatment, it was denied. (Id. at ¶¶ 40-43, 62-66, 131). Accordingly, Phillips's disability discrimination claims, Counts VII and VIII, survive Harbor Venice's Motion to Dismiss to the extent they allege disparate treatment.

### 2.   Hostile Work Environment

In the Eleventh Circuit, to plead a hostile work environment claim, a plaintiff must allege "(1) that he belongs to a protected group, (2) that he was subjected to unwelcome harassment, (3) that the harassment must have been based on a protected characteristic of the employee, (4) that the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) that the employer is responsible for such conduct environment under a theory of either vicarious or direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

As explained above, Phillips's hostile work environment claims survive the motion to dismiss stage. See <u>Flamberg v. Israel</u>, No. 13-62698-CIV, 2014 WL 1600313, at *5 (S.D. Fla. Apr. 21, 2014) (denying motion to dismiss hostile work environment claims brought pursuant to ADA and FCRA where "the drumbeat of oppressive, cruel, and harmful conduct by Flamberg's colleagues and supervisors [went]well beyond mere inconveniences"). Counts VII and VIII remain to the extent they allege a hostile work environment claim.

### 3.   **Constructive Discharge**

For the reasons explained above, Phillips has not alleged facts supporting a claim of disability discrimination under a constructive discharge theory.  To the extent Counts VII and VIII rely on such a theory, they are dismissed.

### C.   **Gender Discrimination Claims**

Counts IX and X allege gender discrimination under the FCRA and Title VII. (Doc. # 28 at 25-27). In support, Phillips alleges that (1) when coming back from her breast cancer surgery, Dandy asked her personal and invasive questions about the surgery; (2) Dandy made her feel as though she should miss as little work as possible while receiving chemotherapy treatments; and (3) Dandy would wear a "Trump tie" to meetings and deride opinions with which he disagreed

as "fake news." (Id. at 5, 26-27). Phillips claims that Dandy's wearing of the "Trump tie" made her feel "inferior as black females [like Phillips] consider Mr. Trump as racist and against minorities, especially black females." (Id. at 26, 27).

The Court agrees with Harbor Venice that these allegations are insufficient to state a cause of action for gender discrimination under either Title VII or the FCRA. See Jiles v. United Parcel Serv., Inc., 360 F. App'x 61, 63 (11th Cir. 2010) (explaining that courts analyze cases brought under the FCRA in the same manner as Title VII because the FCRA was patterned after Title VII). As with the original complaint, the amended complaint fails to allege that she was directly discriminated against due to her gender or that Harbor Venice treated Phillips differently than male nurses. See Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009) (explaining that plaintiffs may provide direct or circumstantial evidence of discrimination); Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003) (explaining that, to establish a prima facie discrimination claim, the plaintiff must show, among other things, that she suffered an adverse employment action and that she was treated less favorably

than a similarly-situated individual outside her protected class). The fact that Dandy's questions about her surgery "made her very uncomfortable because he was discussing her female breasts at work" or that she felt "inferior" due to Dandy's wearing of a "Trump tie" and declaring "fake news" at meetings fails to meet the threshold pleading standard.

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The current allegations do not allow the Court to draw a reasonable inference that Phillips was subject to gender discrimination at the hands of Harbor Venice. See Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). Accordingly, Counts IX and X will be dismissed.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Harbor Venice Management, LLC's Motion to Dismiss Amended Complaint (Doc. # 29) is **GRANTED in part**

**and DENIED in part**. Specifically, Counts I, III, IV, VI, IX, X, and those portions of Counts VII and VIII that rely on a constructive discharge theory are dismissed. Counts II, V, and those portions of Counts VII and VIII that rely on a disparate treatment and/or hostile work environment theory remain.

(2)  Harbor Venice is directed to file an answer to the remaining counts of the amended complaint within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of May, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE